(Cuyahoga Co., O., Court of Common Pleas.)

## IN RE THE STATE OF OHIO v. LOUIS F. POST.

*Contempt of court—Publishing article attacking character of court.*

It is a contempt of court for a party to cause an article reflecting on the character of the judge and his action in the trial of a certain case to be published in a newspaper of general circulation in the city and county where the court was in session, which newspaper as he knew, is kept for sale and is sold in the court-house in said county and city at the news stands located therein, to citizens going in and out of said building.

*Same—"In presence of court" defined.*

Neither place nor distance from the court determines whether or not the act complained of is done constructively in the presence of the court; but if the act is of such a character, and done under such circumstances as that naturally its effect would be felt in the actual administration of justice, then it is as much done in the court's presence as if the person was at the time of doing the act actually in its presence.

*Sec. 14 of Bill of Rights not applicable.*

Proceedings for contempt are not controlled by the 14th section of the Bill of Rights, and no information supported by affidavit is required.

*What will constitute contempt of court.*

Two things must concur to make an act done by an person a contempt of court. It must have been done either actually or constructively in the presence of the court, and it must obstruct the administration of justice.

*"Administration of justice" defined.*

The term "administration of justice" means something more than the mere trial of cause. It includes everything connected with the determination of the rights of person and property, every agency provided by law for the accomplishment of that purpose, and every step in the proceedings and process by which such determinations are embodied in a final determination therein, according to the established law of the land.

*"Obstruction of administration of justice" defined.*

An obstruction to the administration of justice, is anything which interferes with the proceeding or process of the court, by stopping the same, or which is calculated to impair the capacity of the agencies employed for that purpose to act impartially between all parties interested therein.

*Not limited to parties to an action.*

Punishment for contempt has never been limited to parties to an action pending in the court which is the subject of the contempt.

[COPYRIGHT, 1897, BY CARL G. JAHN.]

*Question whether language is contemptuous not admissible.*

A judge will never for a moment, stop to hear an argument from such person, as to whether or not the language which he had thus used was contemptuous or not.

*Professional advice before publication.*

The fact that before its publication a professional opinion was given that the publication would not be a contempt, does not change the essential character of the defamatory article, nor relieve the respondent of responsibility for its origin and dissemination.

LAMSON, J.

This proceeding against the defendant, Louis F. Post, is brought under section 5639, of the Revised Satuttes of the State of Ohio, which provides as follows: "A court or judge at chambers may punish, summarily, a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

To the charge made against him under this act, the defendant answers that he did write the article contained in the charge, and caused the same to be published, and he claims that he had a right to so write and cause said article to be published, because he was the editorial writer of a newspaper, and his purpose was to educate a public sentiment which would correct what he considered certain abuses in judicial proceedings.

The facts, as disclosed by the testimony, and the admission of the defendant are as follows: The newspaper, the Cleveland Recorder, in which the defendant caused this article to be published, is a newspaper of general circulation in the city of Cleveland, and in the county of Cuyahoga, and at the time of the publication of this article and previous thereto had such circulation throughout that territory and was kept for sale and was sold in the courthouse in said county and city at the news stands located therein, to citizens going in and out of said building. The issue of the paper containing the article complained of contained in the charge, was sold in the court house and circulated therein, and in the various court rooms in said court house, and was read by lawyers, court officials and jurors attending said court, and by jurors attending in and before the judge named in said article; all of which was either known to the defendant at the time he wrote said article and caused it to be published or by the exercise of any care upon his part before writing said article, could have been known by him, so far as the facts existed at that time; and as to the subsequent circulation of the paper and the use of it and the article therein, they should have been reasonably apprehended by the defendant before writing the same. The article was brought to the attention of this member of the court, named in the article, while in session, on the day of

its publication, by the comments of lawyers and persons attending the court in the room occupied by that person, by comments made upon the same by said persons and lawyers in the presence of said judge; all of which occurred before the final disposition of the case referred to in said article, and while the same was still pending upon a motion or subject to a motion before said judge for a new trial. The testimony and the admission of the defendant in his answer, together, show that it was clearly his purpose to reach and influence and affect and excite the minds of all persons whom he might reach by the circulation of his paper, irrespective of their relations to the court or the places in which his article might be made public. He offers no word in mitigation of his offense, or retraction or justification.

It has been urged, on behalf of the defendant, that the court had no jurisdiction over the defendant, because the act complained of did not take place in the presence of the court, or even in the court room. This question was raised in the case of Frederick Steube v. The State of Ohio, 3 C. C. Rep., 383, before the Second Circuit Court, at the March Term, 1888, and was fully considered and discussed by that court. This question was again considered by the Supreme Court of the State of Ohio in the case of Meyer v. The Satte of Ohio, in the 46 Ohio St., at page 473.

The case of Steube v. The State was a proceeding in error, prosecuted in the circuit court to reverse the judgment of the common pleas court in Franklin county in the case of The State of Ohio v. Frederick Steube in contempt; and which judgment committed the defendant, Steube, to confinement in the county jail for four months, and to the payment of a fine of $25.00 for an assault upon the prosecuting attorney of Franklin county, on a Saturday afternoon after the adjournment of the court of common pleas on the morning of that day to the following Monday morning; the court at the time of its adjournment having in process of trial a criminal case against one Montgomery, in which the prosecuting attorney represented the state. The assault took place half a mile away from the court house, and upon a public street in front of the Neal House, in the city of Columbus, and, as I have said, while the court was not in session, and would not be in session for two days. This question was raised, in that case, that it was not in the presence of the court, real or constructive; that it was not so near to it as to affect the administration of justice; that it was the result of a private controversy between these two parties, and that the court had no right, by the summary process of contempt, to reach out and take this citizen from his home and bring him in to answer to this act as one against the court. The circuit say: "It is clear that the plaintiff in error was guilty of misbehavior; it did obstruct the administration of justice, and it only remains to determine what is meant by the words, 'in the presence

of the court, or so near thereto,' etc. We have not deemed it necessary to consider the question whether the court has power to punish for contempt, for it is admitted that it is a power inherent in the court, and necessary for its own protection. It is claimed on the one side that the legislature may abridge that power, and on the other that it cannot. It it sufficient in this connection to say that we do not think the legislature has attempted in this state to abridge that power. It is claimed by the plaintiff in error that misbehavior, 'in the presence of the court, or so near thereto,' etc., means misbehavior while the court is in session, and so close thereto that there is a possibility of the ocurt hearing the affray. The testimony in this case that the court was not actually in session, is not a matter material in view of the decision in the case of The United States v Patterson, 26 Fed. Rep., 509. We think the view taken of the statute by counsel for plaintiff in error was too narrow. Whatever acts are calculated to impede, embarrass or obstruct the court in the administration of justice, are considered as done in the presence of the court. Numerous authorities have been cited to show that the acts committed in the presence of the court may be punished as contempts. There can be no question about this; but that the principle which we have above announced is sound and applicable in this case, considering it under our statute, is shown in the well considered cases of Stewart v. People, 3 Scammon 395; People v. Willson 64 Ill., 196, which hold that the plaintiff in error was, in contemplation of law, in the presence of the court, and the act being calculated to actually obstruct the administration of justice, was a contempt of court."

This question was again raised in the case of Myer v. The State, in the 46 Ohio St., —, to reverse the judgment of the common pleas court of Franklin county, in this state, in the case of The State v. Myer, in con tempt, which judgment imposed a fine of $200.00 and costs, and committed Myer to the county jail for ninety days, and until the fine and costs were paid. The act complained of in that case was the publication of an article by Myer in the "Cincinnati nquirer," concerning the conduct of Judge Pugh, with reference to the empanneling of a grand jury, in the cases of The State of Ohio v. Montgomery et al. The article was not only published in the city of Cincinnati, but was actually written by Myer in that city; the facts showing, however, that the paper was of general circulation in the city of Columbus, where Judge Pugh was holding court, and that the paper containing the article in question was circulated in and about the court house, and read by the court officers and jurors and persons attending the court; and that the defendant knew or ought to have known, that such use and such distribution would be made of the paper and of the article. Myer was proceeded against under section 5639, above referred to, and the claim was again made there, as made in

this case, and as already made by the authors of such publications for the purposes of escaping responsibility for their acts; that the author was a contributor to a newspaper, and the subject was a proper one for public investigation and inquiry, and that as the article was written in the city of Cincinnati, and published and printed in that city, concerning a judge in the remote county of Franklin, holding court in the city of Columbus, the common pleas court of Franklin county had no jurisdiction to hear and punish him summarily under the provisions of section 5639; and upon this point the Supreme Court say: "The publication came within section 5639 of the Revised Statutes, which reads: ' A court or judge at Chambers may punish summarily a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.' " Further, they say: "It is true the article was not written nor was it circulated by the respondent in the presence of the court; indeed it was written in the city of Cincinnati, though dated at Columbus, but the publication was in the court room as well as elsewhere. It was admitted to have affected and did have effect in the court house at Columbus; and the writer was just as much responsible for that effect as though he had, in the court room himself. and while the court was progressing, circulated and read aloud the article or uttered the libelous words orally." Further, they say: "The statute clearly authorizes, as did the common law, courts to punish summarily as contempts, acts calculated to obstruct their business. They could not be maintained without such power, nor could litigants obtain a fair consideration of their causes in the court where the jury or judge should be subject during the trial, to influences in respect to the case upon trial calculated to impair their capacity to act impartially between the parties." This is the well considered utterance of the Supreme Court of the state of Ohio upon this subject. And without any disrespect to the western tribunals that have held otherwise, in this state it is the law of the land. If, then, under the holding in this case of Steube v. The State by the circuit court, the attack upon the prosecuting attorney of the court at a time when the court is not in session, and made upon the public streets of a city, at least half a mile away from the court house, can be held to be done in the presence of the court under section 5639, and as held by the Supreme Court in the case of Myer v. The State, as to the writing of an article in the city of Cincinnati, and the presenting of the said article to a newspaper published in that city for publication, when the paper circulates in the county of Franklin. and in the city of Columbus, and in and through and about the court house in said city, can be said to be an act done in the presence of the court sitting in the courthouse in the city of Columbus, and in the county of Franklin, there can be no question but that an article written and published

in a newspaper in the city of Cleveland, by the editorial writer of a paper, which paper circulates generally in this city, and in this county, covering the jurisdiction of the court, and sold and circulated and read in the court house and in the rooms of the courthouse. was an act done in the presence of the court. And, to quote the language of the Supreme Court upon that subject: "And the writer was just as responsible for that effect, as though he had in the court room himself, and while the court was progressing, circulated and read aloud the article or uttered the libelous words orally."

The next claim of the defendant is, that under the constitution of the state, he cannot be proceeded against for contempt without first an information being filed in the court against him, supported by affidavit, and he predicates this claim upon section 14 of the Bill of Rights, which provides: "That no warrant shall be issued but upon probable cause, supported by oath, upon information particularly describing the place to be searched, and the persons and things to be seized." I think no man on the bench has been more conservative, and more of a conservator of the constitutional rights of citizens than myself. I have, perhaps, some of the old-fashioned respect and reverence for a constitution, which, possibly, is more or less fading away in these days. I believe its provisions mean something, and that it is the highest law binding upon courts as well as citizens. And if I had any question in my mind under the holdings of our courts as to the constitutional rights of this defendant in this proceeding, he would certainly have the benefit of that question. I am sitting here not as an individual party. I am sitting here to protect him, and am his protector as well as of those who are represented under the name of the state of Ohio. It is conceded by counsel for the defendant, however, that there are exceptions to this provision of the constitution in contempt proceedings; that there are cases in contempt which do not come under the requirements of this provision of the Bill of Rights. Counsel simply claim that these are cases in which the act occurred in the presence of the court, and therefore the facts of which are known personally to the judge in the proceeding. I have yet to find any authority which will justify such a discrimination as to a constitutional right. If this provision of the constitution applies to the defendant in this case, it applies to him in any situation in which his liberties or his rights may be attacked. The origin of the charge against him, the method by which it may be established, the proof competent to sustain it, known to one person or to another, cannot affect the express provisions of the constitution if they are applicable to the case at bar. Whether the court must hear testimony from witnesses, or whether it has within its own judicial cognizance the knowledge sufficient to predicate a judgment of defendant's guilt, can make no difference in the constitutional rights of the defendant

under this section of the Bill of Rights. But this question is not left without precedent. The question has also been settled in this state, and settled against the defendant. I have been referred to the case of Lowe v. The State, in the 9th Ohio St., 337. The section of the statute under which that proceeding was begun and prosecuted to a termination, embodied the provisions of section 5639, as we now have them in the Revised Statutes of Ohio, and also sections 5640 and 5641 of said statutes. The provisions of section 5641, as thus involved in the case of Lowe v. The State, require that a charge in writing should be filed in proceedings which would now be brought under section 5639, as well as under scetion 5640. That was the simple requirement of the statutes, and the only holding of the court in that case was that a charge in writing against the defendant spread upon the journal of the court was necessary at some time in that proceeding, and that the defendant have an opportunity to answer thereto and be heard thereon. Since that decision the subject-matter of the provisions of that section have been divided into separate sections, as I have already referred to. Section 5639, under which this proceeding is brought, is one of them, providing for the summary punishment for contempt. The balance of the section, as far as the subject matter of the contempt is concerned, is provided for in section 5640, which provides that the following acts may be punished as for con tempt:

1.  Disobedience of, or resistance to, a lawful writ, process, etc.

2.  Misbehavior of an officer of the court.

3.  Failure to obey a subpoena duly served.

4.  The rescue, or attempted rescue, of a person or of property in the custody of an officer.

5.  Failure upon the part of a person recognized to appear as a witness in any court, etc.

Section 5641 embodies the remainder of this section which was under consideration in the case of Lowe v. The State, and provides as follows:

"In cases under the last section, a charge in writing shall be filed with the clerk, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel; but this section shall not be so construed as to prevent the court from issuing process to bring the accused party into court, or from holding him in custody, pending such proceedings."

And at the time of the institution of the proceedings at bar, there was no statutory requirement that a charge in writing should be filed in cases coming under section 5639, and this renders entirely inapplicable to the case at bar that of Lowe v. The State. But all that was held in that case was that a charge in writing must be filed, while section 14 of the Bill of Rights requires an affidavit. I take it that if the constitutional provision apply to this class of cases at all,

it applies in all its terms and all its provisions; and it would not be a compliance with the provisions of that section to file a complaint not sworn to or not supported by an affidavit.

I think that counsel for the defendant, when they conceded that the summary process of contempt might in some cases be exercised by the court without information, covered the whole ground of their objection. But this question was involved in the case of Steube v. The State of Ohio, decided in the Second Circuit Court, to which reference has already been made. In that the complaint was filed, it is true, by an attorney caused to be appointed by the court; but it was simply a charge spread upon the journal of the court, and not supported by affidavit, and had none of the characteristics of an information as we understand that term to require. It certainly did not comply with the requirements of the 14th section of the Bill of Rights, that there should be an information supported by affidavit. The question was raised in that case, that the complaint for this reason was defective, and the court had no jurisdiction over the defendant or the subject-matter. The circuit court, on that subject, say: "We are of the opinion that the demurrer was not well taken; and indeed, no serious objection is urged to the complaint except that it was not sworn to. The practice in other states may require affidavits to be filed in proceedings in contempt; but in this state, it in a case of this kind any complaint at all is necessary, which we do not decide, this was sufficient.'

Further, they say: "An examination of the statute of 1834, Swan's Statutes, of 1841, page 211, and comparing it with the present statute, would seem to show that no complaint is necessary."

Referring again to the case of Myer v. The State we find the contempt proceeding in that case was instituted before the same judge before whom the proceedings in Steube v. The State was tried. The complaint in the Myer case was drawn by the same counsel who drew the complaint in the case of Steube; and the recitation in that case is, that the complaint was presented by counsel especially appointed by the court of that purpose, alleging certain matters as contempt against the defendant. The answer of the defendant was as to the jurisdiction of the court over such matters; and the contention of the defendant in his error proceeding was that the court had no right to issue the attachment against the defendant below and pronounce sentence.

The matters charged as contempt in the case of Steube and in the case of Myer, occurred substantially at the same time, and during the trial of the same case, and before the same judge, at the same term of court in Franklin county, and the complaint in each case was drawn and filed at substantially the same time; and it is apparent that the charges in the two cases are substantially the same.

With these holdings by the courts of our own state, the question sought to be made as to the sufficiency of the charge in this case is not an open question, but determined against the defendant. It is claimed, however, by the defendant, that the case of Myer v. The State does not apply, because Myer was a party to the action then on trial. That is an error. Myer was not a party to the case on trial. It was a criminal proceeding against Montgomery, and Montgomery was the only party on trial; and Myer was not a party to that suit in any sense of the word so that it bound or affected him in any manner whatever. And so far as the record discloses, he was not even a witness in the case. In the other case, Steube was not a party in the action which was on trial. He had been a witness called in the case by the defendant, and his testimony taken; and for all that appears, his connection with the case then ended. Sufficient to say, however, that their relationships to the cases, beyond the transactions out of which the contempt proceeding grew, were not commented upon by the court. It would seem, however, that if any person was to be privileged to criticize a court, it would be a person who had some direct interest at stake in the proceeding, and was affected thereby, and not an entire stranger to the transaction, and one purely a volunteer in the cause.

Punishment for contempt has never been limited to parties to an action pending in the court which is the subject of the contempt. This is altogether too narrow a view of the doctrine of contempt, whether the proceedings are instituted under section 5639 or section 5640, of the Revised Statutes. The case of The State v. Goff, Wright's Reports, 78, settles this doctrine as to cases under section 5639; and the case of John Dempsey v. The Bank Street Railroad Company et al., decided by this court in 1889 and affirmed by the Circuit and Supreme Courts, settles this doctrine as to cases under section 5640. These holdings are supported by ample authority outside of the state. From these authorities it is easy to deduct the rule that neither place nor distance from the court determines whether or not the act complained of is done constructively in its presence; but if the act is of such a character, and done under such circumstances as that naturally its effect would be felt in the actual administration of justice, then it is as certainly done in the court's presence as if the person was at he time of doing the act actually in its presence.

Proceedings of this kind necessarily are more or less embarrassing to a judge presiding in them. Their rarity is the best guarantee that judges in the exercise of this summary process are exceedingly cautious. And however unpleasant it may be to me, part of this opinion of the court should be addressed to this article as to its character, and as to its tendency, as it is claimed that this act in question is not contemptuous. It is true that two things must concur to make an act done by any person a contempt of court. It must have been done either actually or constructively in the presence of the court, and it must obstruct the administration of justice; and a proper determination of the meaning of this language will settle this objection. The term 'administration of justice" is a broad and comprehensive term. It means something more than the mere trial of a cause. It includes everything connected with the determination of the rights of person and property, every agency provided by law for the accomplishment of that purpose, and every step in the proceedings and process by which such determinations are embodied in a final determination therein, according to the established law of the land. And an obstruction" to the administration of justice, is anything which interferes with this proceeding or process by stopping the same, or which is calculated to impair the capacity of the agencies thus employed to act impartially between all parties interested therein.

It is true the court said that it did not care to hear argument upon the subject-matter of the article; that when the court reached out by summary process and called an individual, whether a member of the bar or a member of the community at large, to account for utterances which tended to impede or impair or embarrass the administration of justice, that tribunal by that act necessarily prejudged the article and its character. Otherwise, it would have no right to issue its process. Otherwise, its process would be an abuse of its judicial power. Further, this course is sustained by the authorities, and for a very wise and proper purpose. Proceedings of this kind tend to temper and excitement, tend to arouse hostility and prejudice; as to this, I need cite no evidence. It then becomes of the utmost importance that proceedings of this character should be so conducted as to relieve them a much as possible of these not only embarrassing, but injurious features. As the Supreme Court have said, the defendant, in writing and publishing this article, under the facts admitted in this case, did it in effect the same as if he was present in the court, and in the hearing of the court had uttered the language of this article orally, directed at the court itself. Would a judge for a moment, under such circumstances, when he had arrested the attention of the party to the matter complained of, stop to hear an argument from such person, as to whether or not the language which he had thus used was contemptuous or not? Would the court for a moment stop and hear the defendant upon the proposition whether or not the charge that a judge upon the bench in the trial of a case was a judicial autocrat, governed by his own whims and by his own temper and his own uncontrolled will, and not by the law of the land and his oath to administer the law impartially between the parties in that case?) Any judge would sacrifice all the self-respect that he possessed, and the confidence of the entire community,

who would stop for a moment under such circumstances, and hear one word of comment or of argument upon that proposition. It would be but aggravating the offense already committed. And so courts have held universally upon this proposition, for a wise purpose, that the occasion may not be made a further opportunity in the heat and passion of the contest which goes on, of abusing and maligning or questioning the honesty and integrity of the court. There can be no wiser rule instituted for the preservation of the peace and quiet of the community and the usefulness of the judiciary. I have, in what I have said, given the substance of the charge made in this article. Can there be any question about its being contemptuous? Certainly not.

Upon this subject the Supreme Court has already spoken. The fact that before its publication a profe sional opinion was given that the publication would not be a contempt does not change the essential character of the defamatory article, nor relieve the respondent of responsibility for its origin and dissemination, neither was he justified in resorting to such means to right a real or imaginary wrong to him in respect to the finding of the indictment. A plea in abatement would have searched the record and caused the indictment to be set aside if found by any illegal body or procured by improper means. It would certainly seem, if there was ever occasion when a party should be justified in criticizing the court, that would be an occasion when he might say: "The court has trespassed upon my rights, and with partiality and prejudice involved and endangered my liberty." And yet under the heat of those circumstances the Supreme Court have said that is not his remedy. The peace of the community, the safety of lives and property, require that every person shall right his wrongs by proper proceedings according to law. This doctrine runs all through the administration of justice. It has no exception. How much less had this defendant, then, a right to attack the court in this instance under no excitement, and with no provocation. The case referred to in the article was pending before this court; the opportunity to file a motion for a new trial and to correct any error which the court had committed in that case, was open to the party aggrieved, if any grievance he had. Neither he, nor anyone else for him, says the Supreme Court, had any right to resort to the methods employed in this instane, to right any real or imaginary wrong. The provisions for judicial inquiry under the code of the state of Ohio are simple, direct and complete. Safety of property and safety of person depend upon the strict enforcement of such rules of law. If this attack can be made upon the court in this instance, it can be made upon the court in every case that is tried before the courts in this community. It is only necessary for the court to call the attention of right thinking and rightly constituted people to these things, and the dangers that are incident to them, to have an immediate acquiescence in every utterance which the court makes. If an editorial writer or correspondent of a newspaper can champion the cause of one party in a case in the courts, he can champion the cause of any party he sees fit. Humanity is not above temptation, and much of it not above price. If an individual can hide himself behind the editorial pages of a newspaper, and sink his identity in the name of the paper, and attack a court in one case because it has not done justice to one party in the case, as he thinks, he can attack the court in every case which is tried before it or comes before it for consideration. Responsible to no one, answerable to no one for his acts, reviewable by no tribunal whatever, many times entirely and completely irresponsible, he can dictate to a judicial tribunal, one of the co-ordinate branches of the government, subject to review in every action and in the exercise of every discretion, by courts above it, sworn by its oath to administer the law and justice impartially between the parties, answerable to the people, and required by them to return to them at stated periods, to dictate to a tribunal thus governed and ruled and controlled, at his own will, and to suit his own caprices and prejudices, what such a tribunal shall do in the various cases which are on for trial before it, and enforce his command by the use of such language as in his judgment will best accomplish his purpose; this opens the door to one state of society, and only one—and that is anarchy.

Much has been said and written concerning the dignity of courts and the judges sitting therein. A court has no dignity except that which comes from free, unbiased, uninterrupted administration of justice in cases pending therein. And judges have no dignity except that which comes from a fearless, unbiased and uninterrupted administration of the law between the parties in such cases. And as to proceedings for contempt, to sustain such dignity, the Supreme Court of this state, in the case of The State v. Goff, Wright's Reports, 78, say · "This proceeding is not to enforce respect to individual judges on the bench, or to protect their dignity. It is to secure the administration of justice from interruption; and though as men we should take no steps to enforce respect, yet the respect of the whole people of the state, and the dignity of their courts of justice under our administration must and shall be respected."

In the case of Fensal v. Tracy, Judge Drummond, who for years has been noted as a judge of the United States Circuit Court, says: "A party who has conducted himself in such a way as to justify the court in punishing him for contempt, has committed an offense against the United States. The court is the mere instrument or organ of the government in punishing the person for the offense he has committed. If he is imprisoned by order of the court, it is the act of the United States. The United States is the custodian of his person. If he is fined

by the court, the fine goes to the United States. And although it may be a proceeding growing out of a civil action, it is distinct in its character and in many of its essentials and particulars. The United States is the party to the proceeding, not the mere defendant or plaintiff, upon the record of the court.'' So in this case. This defendant is called to answer to the state of Ohio. The court is the mere instrument or organ of the government of the state in punishing him for the offense which he has committed. If he is imprisoned, his imprisonment is by the government of the state of Ohio. If he is fined, his fine is by the state.

Mr. .Post, will you stand up?

You are an entire stranger to me. I never met you before. Without any personal feeling whatever toward you and your interests, it becomes my most important and solemn duty to sentence you in this proceeding. It is a duty, but an unpleasant one. No man invested with power to deprive one' of his property or his liberty, ever exercises that power, if rightly constituted, without regret and without sorrow. But it is my duty to do it, and, therefore, I impose upon you a sentence in this case of imprisonment in the county jail for the period of ten days. and the pa)ment of a fine of Two Hundred Dollars, and the costs of this proceeding, and stand committed until the fine and costs are paid.

T. L. Strimple, Prosecuting Attorney.

Blandin & Rice, and W. P. Hackney, for Defendant.